IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DEAN E. WEISGOLD, P.C.,** *a Pennsylvania Professional Corporation, individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> **ALLIED MEDICAL ASSOCIATES P.C., et al.**, <br><br> Defendants. | CIVIL ACTION <br><br> NO. 21-1664-KSM |

### MEMORANDUM

**MARSTON, J.**                                                                                                         December 14, 2021

      Plaintiff Dean E. Weisgold, P.C. ("Plaintiff" or "the law firm"), on behalf of itself and a class of others similarly situated, asserts a Telephone Consumer Protection Act ("TCPA") claim and state law conversion claim against Defendants Allied Medical Associates P.C. and Dr. Bryan H. Ehrlich, after the law firm allegedly received a one-page fax from Defendants on December 3, 2020. (Doc. No. 1.) Plaintiff alleges that the fax—which explained how the law firm could sign its new clients up for appointments at Defendants' medical practice and how the firm could access medical records for, and receive status updates on, its already established clients—constitutes an unsolicited advertisement under the TCPA. (*Id.*) Defendants move to dismiss the complaint, contending that Plaintiff fails to state a claim under the TCPA because the fax was not an advertisement and that the Court should decline to exercise supplemental jurisdiction over the conversion claim. (Doc. No. 7.) Plaintiff opposes the motion. (Doc. No. 8.)

      For the reasons discussed below, the Court denies the motion.

**I.   Factual Background**

Accepting all of Plaintiff's allegations as true, the relevant facts are as follows.

On December 3, 2020, Plaintiff and at least 39 other recipients received an unsolicited one-page fax from Defendants.  (Doc. No. 1 at ¶¶ 17–18, 20.)  Plaintiff did not give Defendants permission to send it a fax, nor had it conducted prior business with Defendants.  (*Id.* at ¶ 20.)

The top of the fax lists Allied Medical Associates's different office locations in the greater Philadelphia area, and states, "Whether you and your staff are in the office or working remotely, Allied Medical has the tools to provide your firm with all the help that you may need." (Doc. No. 1, Ex. 1 at p. 15.)  The fax is then divided into two sections.  On the top half of the page, the fax provides information concerning how recipients can sign up their new clients for medical appointments.  (*See id.*)  The fax states:

> **NEW CLIENT/PATIENT SIGN-UPS:**
>
> Visit our website: https://alliedmedassoc.com/, click on the patient portal tab and follow the links along with your client.  When completed, Allied staff will contact and schedule your client.  By doing this, the client's information is ready to go when they arrive.  This minimizes patient time/exposure and is more efficient for everyone.  Your staff can use this feature from the office or when working remotely.
>
> If time does not allow for the above [it takes about 10 minutes], simply go to the web site, https:/alliedmedassoc.com/ and click on the schedule now tab.  Just enter your clients' demographic information and click submit.  We will take it from there.
>
> You can also send an email to: Appointments@alliedmedassoc.com [sic] include your clients' name, date of accident, and cell phone number and we will do the rest.
>
> Not sure if we have a location convenient to your clients?  Go to the web site https://alliedmedassoc.com/ and click on the locations tab.  Click on any location for the SEPTA bus routes.  PLEASE NOTE: We also offer transportation, when needed.
>
> Lastly, if you or your stuff are working remotely, feel free to send any documents which require your clients' signature to our office in PDF

>  format.  We will have your client sign the forms.  We will then scan them
>  and email them to your office and send the originals by mail.

(*Id.*)

On the bottom half of the page, the fax explains how recipients can access their clients' medical records or see the status of their clients' medical care.  (*Id.*)  The fax reads:

> **ESTABLISHED CLIENTS/PATIENTS:**
>
> For status of your clients' care contact Nicholas Morrison, Marketing Director and Attorney Liaison at: nmorrison@alliedmedassoc.com or 800-342-1153 Ext. 4030.
>
> For Medical Records you can either go to the web site https://alliedmedassoc.com/ and click the Medical Records tab, enter your clients' information and click submit, or email us at: Medical_Records@alliedmedassoc.com.  Please be sure to include your clients' name, and date of accident.  Records can be sent by UPS, regular mail, or by email in PDF format.  [Please note for HIPPA compliance records sent by email will be password protected.]

(*Id.*)  Finally, the last few lines of the fax provide Defendants' general contact information.  (S*ee id.* ("Not sure who to contact?  Email: Info@alliedmedassoc.com and your message will be forwarded to the right staff member to help you.  And of course we are always available by phone at: 800-342-1153.").)

## II.   Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Factual allegations must be enough to raise a right to relief above the

speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When reviewing a motion to dismiss, courts "must accept the allegations in the complaint as true, but are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted). "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "However, an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Id.* (quotation marks omitted and alterations accepted).

**III. Discussion**

The TCPA makes it "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C); *see also Mauthe v. Nat'l Imaging Assocs., Inc.*, 767 F. App'x 246, 248 (3d Cir. 2019) ("*NIA*"). The TCPA defines an unsolicited advertisement as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). The Third Circuit has held that "to be an ad, the fax must promote goods or services to be bought or sold." *Robert W. Mauthe M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 153 (3d Cir. 2020) ("*Spreemo*"); *NIA*, 767 F. App'x at 248; *Robert W. Mauthe, M.D., P.C. v. Optum, Inc.*, 925 F.3d 129 (3d Cir. 2019) ("*Optum*").

A fax need not explicitly say "buy this product from us" to fall within the meaning of an advertisement under the TCPA. *NIA*, 767 F. App'x at 259. However, that does not mean that every fax sent to an unwanting recipient violates the TCPA, even if the fax was sent for a commercial purpose and/or from a commercial entity. *See Optum*, 925 F.3d at 133 ("[T]he TCPA only prohibits unsolicited advertisements, not any and all faxes, even if sent for a commercial purpose. It seems beyond doubt that a fax does not become an advertisement merely because the sender intended it to enhance the quality of its products or services and thus its profits. After all, a commercial entity takes almost all of its actions with a profit motivation."); *NIA*, 767 F. App'x at 249 ("We believe it is important to limit the TCPA to promotion of the sale of goods or services lest any unsolicited fax that a commercial entity sends that contains a phone number or website address conceivably could become an 'unsolicited advertisement,' a result that would be inconsistent with the statutory definition of that term."). For the sending of a fax to violate the TCPA, it must, at a minimum, "directly or indirectly inform the recipient that the sender or some other entity sells something of value." *Id.*; *see also Robert W. Mauthe, M.D., P.C. v. Millennium Health LLC*, Civil Action No. 18-1903, 2020 WL 2793954, at *8 (E.D. Pa. May 29, 2020) ("*Millennium Health*").

The Third Circuit has outlined two different tests for determining whether a fax constitutes an advertisement that violates the TCPA: one for when the offending fax is sent to a direct purchaser, and one for when the intended purchaser is not the recipient of the fax, but rather a third party. "The first test—the direct purchaser test—applies when a sender sends an unsolicited advertisement to an individual who is the direct purchaser of the sender's goods, products or services." *Millennium Health*, 2020 WL 2793954, at *8; *see also id.* at *9–10 (applying the direct purchaser test when the fax "promoted a free seminar offered directly to the

plaintiff" and noting that the "fax and the related seminar were intended for clinicians, like the plaintiff, not patients and insurers"); *NIA*, 717 F. App'x at 249 (applying direct purchaser test where the fax informed the plaintiff that "he should visit the website for the purpose of completing [a] satisfaction survey").

"The second test—the third-party liability test—applies when a sender sends an unsolicited advertisement to an individual or entity that is not the direct purchaser, but could motivate another party to purchase the sender's goods, products or services." *Millennium Health*, 2020 WL 2793954, at *8. "An example of a possible TCPA violation by the sending of a fax to an entity other than a possible direct purchaser of the sender's product or services is a fax sent to a doctor encouraging the doctor to prescribe a particular drug to the doctor's patients who, rather than the doctor, are the likely purchasers of the sender's product." *Optum*, 925 F.3d at 133; *see also id.* (applying third-party liability test "because the defendants sent the fax to [the plaintiff] in order to update their database [which was in turn] to be accessed by third parties who were not the recipients of defendants' faxes" and noting that "the faxes were not an attempt to sell [the plaintiff] or the putative class members anything"); *Spreemo*, 806 F. App'x at 153–54 (applying third-party liability test where a fax advertising diagnostic testing services was sent to doctors and noting that "the choice remained with the doctor as to whom to send patients for testing, and the fax can be considered as an attempt to influence that choice, with the patients being the ultimate purchasers of the diagnostic services").

For a fax to be an advertisement under the first test—the direct purchaser test—it must inform the recipient that the sender or another seller sells something of value, and the fax must either (1) notify the potential buyer that he or she could purchase a product, goods, or services from the sending entity or another seller, or (2) induce or direct a willing buyer to seek further

6

information through a phone number, an email address, a website, or equivalent method for the purposes of making a sale.  *NIA*, 767 F. App'x at 249; *see also Millennium Health*, 2020 WL 2793954, at *10.  Under the second test—the third-party liability test—a plaintiff must show that the fax:  (1) sought to promote or enhance the quality or quantity of a product or services being sold commercially; (2) was reasonably calculated to increase the profits of the sender; and (3) directly or indirectly encouraged the recipient to influence the purchasing decisions of a third party.  *Optum*, 925 F.3d at 134.

      Regardless of which test applies, "[i]t is not enough that the sender sent a fax with a profit motive—in order to show that the sender is trying to make a sale, there must be a nexus between the fax and the purchasing decision of an ultimate purchaser whether the recipient of the fax or a third party."  *Id.* ("The liability standard articulated in NIA [the direct purchaser test], and the one we articulate here in a third-party based liability situation, hinges on whether the fax was somehow intended to influence a potential buyer's decision in making a purchase, irrespective of whether the sender sent the fax to the potential buyer[.]").

      Here, the parties disagree over which test the Court should apply, so, as a threshold matter, we must determine which test governs.  Defendants argue that the direct purchaser test applies (Doc. No. 7 at p. 10), while Plaintiff asserts that the third-party liability test applies (Doc. 8 at p. 8).

      We agree with Plaintiff.  The facts in this case closely resemble those of the third-party based liability example the Third Circuit outlined in *Optum*—namely, "a fax sent to a doctor encouraging the doctor to prescribe a particular drug to the doctor's patients who, rather than the doctor, are the likely purchasers of the sender's product"—which constituted a possible TCPA violation.  925 F.3d at 133.  Similarly, here, the likely purchasers of Defendants' product are the

law firm's clients, not the law firm itself.  The first half of the fax advises the law firm on how to sign its clients up for medical appointments with Defendants and thus encourages Defendants to have its clients use, and ultimately purchase, Defendants' services.

Defendants rely upon *Millennium Health* to argue that the direct purchaser test applies, but that case is inapposite.  There, the court applied the direct purchaser test, reasoning that the fax and the free seminar the fax promoted "were intended for clinicians, like the plaintiff, not patients or insurers."  *Id.* at *9.  Critically, the fax did not promote the defendant's urine drug testing services; it only promoted a *free* seminar for clinicians to attend in which they would learn about urine drug testing.  *Id.*  Unlike the *Millennium Health* fax, the fax Defendants sent to Plaintiff did not contain the word "free" anywhere on it.  In addition, it cannot be said that the services promoted in the instant fax were intended only for law firms, and not their clients.  Rather, the fax explained how Plaintiff could "follow the links along with [its] client[s]" to sign up new clients for appointments.  (Doc. No. 1 at p. 15.)[1]  Finally, *Millennium Health* was decided at the summary judgment stage, not at the early motion to dismiss stage.

Applying the third-party liability test to the facts of this case, the Court concludes that Plaintiff plausibly pleads that the fax is an unsolicited advertisement in violation of the TCPA and denies Defendants' motion to dismiss this claim.  As in *Spreemo*, "[a]ll three elements for third-party based liability are met in this case, at least as alleged and judged at the pleading stage." 806 F. App'x at 153.  "As was the case in *Optum*, and likely the vast majority of third-party based liability cases, it should be reasonably obvious that the fax met the first two

---

[1] If only the second half of the fax was at issue, the Court might be persuaded that the fax did not promote the purchase of any of its services, given that that section pertains only to accessing the medical records of, and status updates for, established clients/patients.  (*See* Doc. No. 1 at p. 15.)  However, the second half of the fax is clearly inapplicable here, as Plaintiff pleads that it had *never* done business with Defendants before.  (*See id.* at ¶ 20.)

elements—it was sent to promote the availability of services, and was done with a profit motive." *Id.* "The deciding factor, therefore, is whether the fax was sent to encourage [Plaintiff] to influence the purchasing decisions of a third party." *Id.* In this case, it is plausible that the fax was sent to encourage Plaintiff to sign its clients up for appointments with Defendants. *See id.* at 154 ("The District Court found that the fax was sent merely for informational purposes, but at the pleading stage it is plausible that the fax was sent to encourage a doctor to send patients to Spreemo whenever diagnostic testing is prescribed.").

It remains to be seen if after discovery, the fax will support a third-party based liability claim at summary judgment. *See Optum*, 925 F.3d at 133–35 (applying third-party liability test and dismissing TCPA claim at summary judgment, where the fax asked the recipient for information to update its database, which was to be accessed by third parties). However, the Court finds that, at this early stage of the litigation, Plaintiff has plausibly pled that the fax constituted an advertisement within the meaning of the TCPA under the third-party liability test. *See Spreemo*, 806 F. App'x at 154 ("At the pleading stage, [the plaintiff] merely needs to plead the plausible.").

Because Plaintiff's TCPA claim survives Defendants' motion to dismiss, and therefore the Court retains federal jurisdiction over this action, the Court need not consider Defendants' argument that we should not exercise jurisdiction over the conversion claim. (*See* Doc. No. 7 at p. 13 ("As Plaintiffs' [sic] federal TCPA claim fails as a matter of law, this Court should also decline to exercise supplemental jurisdiction over the Plaintiffs' [sic] state law claim for conversion[.]").)

**IV.   Conclusion**

For the foregoing reasons, the Court denies Defendants' motion to dismiss.

An appropriate Order follows.